## S99A0520. EDELKIND v. BOUDREAUX.
### (519 SE2d 442)

HINES, Justice.

We granted discretionary appeal from the final judgment and decree entered in this divorce action, which incorporated a purported verbal settlement put on the record but not reduced to writing or executed by the parties. We did so to consider questions of the enforceability of the alleged agreement as well as the standing of former divorce counsel to seek its enforcement. Because we find that the attorney lacked such standing and that the superior court abused its discretion in enforcing the agreement, we reverse.

A divorce action between wife Boudreaux and husband Edelkind was initiated on June 2, 1997.[1] Boudreaux was represented by Stephen C. Steele and the law firm of Moore, Ingram, Johnson & Steele, LLP (MIJS). Boudreaux's attorney fees became substantial, and on or about May 20, 1998, she executed a deed to secure debt on a

---

[1] In conjunction with the divorce, a standing order issued, restraining and enjoining each party, inter alia, from selling, encumbering, contracting to sell, or otherwise disposing of or removing from the jurisdiction of the court, any of the property belonging to the parties except in the ordinary course of business.

townhouse in favor of MIJS.[2] Matters in the divorce continued to be litigated, and on July 23, 1998, Edelkind and Boudreaux appeared in the superior court for a hearing on, inter alia, Boudreaux's petition for contempt against Edelkind.[3] Both were represented by counsel, and at the start of the proceeding, Boudreaux's attorney, Steele, told the court that a final settlement had been reached and counsel asked that it be recited into the record. As part of this alleged agreement, Boudreaux was to be awarded the marital residence as well as the townhouse in their "entirety." Also, Edelkind was to be responsible for $25,000 of Boudreaux's attorney fees as lump sum alimony payable directly to MIJS.

On July 30, 1998, the day before Steele planned to report back to the court[4] with a proposed written final judgment and decree and "consent order and agreement," Boudreaux sent Steele a fax terminating his employment as her attorney as of that date. Boudreaux stated that she would deal directly with Edelkind's attorney "[i]n terms of the final settlement agreement." Steele appeared before the court the morning of July 31, 1998, with a proposed order and judgment awarding attorney fees to Steele and his firm. Also, the MIJS deed to secure debt on the townhouse was filed that day. Edelkind's attorney appeared that afternoon and announced that the parties had reached an agreement that differed from what was recorded at the July 23 hearing. This agreement provided, among other things, that the townhouse was to be awarded to Edelkind instead of Boudreaux, and for a different payment of alimony. The court set a further hearing in the matter for September 15, 1998.

On August 18, 1998, MIJS moved to intervene as plaintiff in the divorce action. On September 16, 1998, the parties executed a written settlement agreement consistent with what was announced by Edelkind's attorney on July 31, 1998. Edelkind was to pay to Boudreaux $1,250 per month as alimony beginning December 15, 1998 and continuing each month thereafter until March 15, 2004; there was no provision for the direct payment of attorney fees.

At a hearing on September 18, 1998, Steele petitioned the court to make what was recited on the record on July 23, 1998, the final judgment and decree. Steele stated that if the court decided not to do so at that time, then he wanted to intervene as a party in the case in order to have the issue of payment of his attorney fees heard.[5]

---

[2] Boudreaux claimed an undivided interest in the townhouse by virtue of a 1992 quitclaim deed in her favor from Edelkind.

[3] This hearing was before a judge sitting for the assigned superior court judge.

[4] Steele intended to present the documents to the judge who had presided at the July 23 hearing.

[5] Along with a request for enforcement of the asserted July 23 agreement "against" Boudreaux and Edelkind, the law firm's proposed "Complaint of Intervention" alleged the fraud-

Edelkind's attorney[6] urged the court not to enforce the alleged agreement of July 23 for several reasons, including the questionable propriety of the fee award secured by the interest in the townhouse, and the significant fact that since July 23, the marital residence had been lost to foreclosure. The court made no ruling on the motion to intervene. But over the parties' objections, the court issued a final judgment and decree incorporating the "transcript between the parties cited into the record on July 23, 1998."[7]

1. It was error to allow former divorce counsel Steele, over the parties' objection, to seek to enforce the alleged July 23 agreement for the purpose of collecting fees from his former client. Steele and MIJS claim standing to have done so on the basis that they were intended third party beneficiaries of the asserted July 23 agreement, as the $25,000 in attorney fees was to be paid directly to Steele's office and Boudreaux intended to satisfy part of the legal fees she owed through the award of the townhouse. Pretermitting threshold questions of the propriety of the conveyance of the interest in the townhouse to MIJS during the pendency of the divorce, the claim of pursuing enforcement as third party beneficiaries is unavailing.

It is true that under OCGA § 9-2-20 (b), a third party beneficiary to a contract may bring suit to enforce the contract. *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978); *Backus v. Chilivis*, 236 Ga. 500, 502 (II) (224 SE2d 370) (1976); *Page v. City of Conyers*, 231 Ga. App. 264, 265 (1) (499 SE2d 126) (1998). But accepting arguendo that the alleged oral divorce agreement conferred third party beneficiary status on the attorney and/or the firm, neither Steele nor MIJS brought suit. Nor were they granted intervention as a party in the divorce action before petitioning for enforcement of the parties' purported agreement. Under OCGA § 19-6-2, an attorney may also bring an action in the attorney's own name to enforce a grant of attorney fees made pursuant to the Code section. But, there is no claim that such an award of fees is at issue in this case.

2. Oral settlement agreements in divorce cases are contracts and may be enforced if their existence is established without dispute; but, such a contract does not exist until all essential terms have been agreed to. *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992). See also *Bridges v. Bridges*, 256 Ga. 348, 349 (1) (349 SE2d 172) (1986); *Herndon v. Herndon*, 227 Ga. 781, 783 (183 SE2d 386) (1971). "[T]he failure to agree to even one essential term means there

---

ulent conveyance of the Vinings townhouse to Edelkind and a wilful and deliberate conspiracy between the parties to unlawfully oppress and deprive MIJS of attorney fees.

[6] Boudreaux was not represented by counsel at the hearing.

[7] The September 18 hearing was conducted and the subsequent ruling made by the superior court judge assigned the case.

is 'no agreement to be enforced.'" *Reichard* at 564 (2).

Here, the transcript of the July 23 hearing makes questionable whether the parties or their respective attorneys at that point had reached agreement on all items necessary for final settlement of the marital estate. This was not a situation where counsel merely recited an agreement for the record; the case, in large measure, was still being tried by the court. There was continuing debate and argument among counsel, the parties, and the court regarding, among other things, the parties' access to the townhouse, and the whereabouts and ownership of the parties' personal property. This was significant because Edelkind's counsel made it clear that Edelkind's willingness to relinquish claims to equity in the real property was dependent, in some measure, on his award of personal property.[8] Until it could reach a decision regarding the parties' personal property, the court restrained and enjoined Boudreaux and Edelkind from removing anything from either the marital residence or the townhouse. Consequently, even though the parties answered affirmatively when asked whether they understood the alleged agreement and that they would be bound by it, such responses would not, of themselves, transform an agreement in progress into a final settlement.

Even accepting that the recitation was sufficiently clear, definite, and certain so as to constitute a settlement agreement of the divorce, that does not end the inquiry. In a divorce action, the court has the discretion to approve or reject the agreement, in whole or in part, before it becomes the judgment of the court itself. *Franz v. Franz*, 268 Ga. 465, 466 (3) (490 SE2d 377) (1997); *Bridges v. Bridges*, supra at 350 (1). But this discretion is not absolute and can be abused. *Mathes v. Mathes*, 267 Ga. 845, 846 (483 SE2d 573) (1997).

Here, the court focused on Steele's petition aimed at procuring attorney fees, and the court refused to go beyond the fact that the July agreement was put on the record. As has been discussed, an oral agreement may indeed be enforceable, *Reichard v. Reichard*, supra, for certainly this state has a strong public policy of encouraging negotiations and settlements, *Robinson v. Robinson*, 261 Ga. 330, 331 (404 SE2d 435) (1991). But, a divorce decree should accurately reflect

---

[8] Boudreaux contended that Edelkind had moved personal property, in which she had an interest, from the marital residence to the townhouse. Edelkind maintained that what remained in the townhouse belonged to his tenants. There was so much still in dispute, that the court stated that the parties were "being stubbornly litigious" and commented, "I'm not sure I'm going to stay here and accept an agreement where they can't agree on a thing." Suggested resolution of the property claims ranged from awarding the contents of both the marital residence and the townhouse to Boudreaux because she then expected to receive both the real properties; to keeping the personal property that each party then had in his or her possession; to having the attorneys inventory the property and report back to the court. Finally, the court suggested that the parties exchange lists of personal items, and that the court would rule on the listed items.

a settlement reached by the parties. See *DeGarmo v. DeGarmo*, 269 Ga. 480 (1) (499 SE2d 317) (1998). And at the time these parties entered into their written agreement, there had been no final judgment fixing the parties' rights. See *Smith v. Simonds*, 234 Ga. App. 575, 576 (1) (506 SE2d 874) (1998). Yet, the court, over both parties' objections, refused to consider their executed written agreement and instead enforced the purported oral one. It did so in the face of the undisputed material change in the marital real property and its possible impact on the parties' property division and the award of alimony to Boudreaux, and without resolution of the allegations regarding the propriety of the attorney fee award secured by property then at issue in the divorce. What is more, the court enforced the oral agreement based upon the erroneous assumption that the former attorney then had standing to seek enforcement. Under these circumstances, the trial court abused its discretion in entering a final judgment and decree of divorce incorporating as the parties' divorce settlement what was recorded at the July 23, 1998 hearing. *Franz*, supra at 466 (3); *Mathes*, supra at 846.

3. The judgment must be reversed and the case remanded to the superior court for further proceedings consistent with this opinion, including but not necessarily limited to, a determination of the enforceability of the parties' written settlement agreement executed on September 16, 1998.

*Judgment reversed and case remanded with direction. All the Justices concur, except Thompson, J., who dissents.*

THOMPSON, Justice, dissenting.

I respectfully dissent as to Division 2 of the majority opinion.

An oral settlement agreement announced in open court must meet all of the requirements of a contract: offer, acceptance, consideration and a meeting of the minds. *Blum v. Morgan Guaranty Trust Co.*, 709 F2d 1463 (11th Cir. 1983) (applying Georgia law). Thus, the parties have to agree on essential terms. *Bridges v. Bridges*, 256 Ga.· 348, 349 (1) (349 SE2d 172) (1986). In my view, the agreement reached by the parties on July 23 met all of the requirements of a contract. It is true that, while the agreement was being put on the record, the parties debated the *best way* for them to take possession of their personal effects; however, even if it could be said that that dispute centered around an essential term of the contract, the parties settled that dispute before the hearing ended. Thus, the trial court correctly concluded that the parties reached a settlement agreement on July 23, and it cannot be said that the trial court abused its discretion in incorporating that agreement into a final judgment and decree of divorce.

As to Division 1, I believe that any questions concerning Steele's

right to enforce the settlement agreement are premature. Although the trial court ruled that the parties reached a settlement agreement on July 23, it did not grant Steele's motion to intervene and it did not determine whether Steele could enforce the agreement insofar as it pertained to the payment of his attorney fees. Thus, the trial court simply held the parties to their bargain. It decided no other issues, and neither should this Court.

DECIDED JULY 6, 1999.

*Christine M. Stadler,* for appellant.
*Moore, Ingram, Johnson & Steele, Stephen C. Steele, Dean C. Bucci,* for appellee.
*Davis, Matthews & Quigley, Frank A. DeVincent,* amicus curiae.