GARLAND, Circuit Judge,
concurring in the judgment:
Petitioner Volks Constructors raises three principal arguments relating to its OSHA citations. First, Volks contends that the Secretary’s interpretation of the OSH Act’s six-month statute of limitations, 29 U.S.C. § 658(c), is not entitled to Chevron deference. Second, it contends that, even if the Secretary were entitled to deference, her interpretation of the statute as authorizing citations for “continuing violations” is unreasonable. Third, Volks argues that the regulations that OSHA cited it for violating do not — in any event— impose continuing obligations that may be continually violated.
Volks’ third argument suffices to resolve its petition because, as the Court states, the Secretary’s regulations impose upon employers “discrete” rather than continuing obligations to make records. Court Op. at 756. I write to explain why those regulations cannot reasonably be read otherwise, and hence why the citations are untimely under the applicable statute of limitations. This does not mean, however, that the statute could not admit of a continuing violation theory under other circumstances.
I
The OSH Act’s statute of limitations states: “No citation may be issued under this section after the expiration of six months following the occurrence of any violation.” 29 U.S.C. § 658(c). As the Court notes, the word “occurrence” refers to something that “happened” in the past. Court Op. at 755 (citing Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 & n. 5, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). Here, the thing that “happened” was Volks’ “violation” of an obligation imposed by the OSHA regulations specified in the citations. Under the statute, a violation can thus consist not only of an act, but also of a failure to act: here, Volks’ “failures to make and review records” as required by the regulations. Court Op. at 755. Finally, I agree with my colleagues that, in this case, “every single violation *760 for which Volks was cited ... ‘occurred’ more than six months before the issuance of the citations.” Id. This is why:
1. OSHA cited Volks for violating 29 C.F.R. § 1904.29(b)(2) and (b)(3), by failing to record employees’ work-related injuries and illnesses on the OSHA 300 log and OSHA 301 incident report forms. See Citation at 15-20, 21-29 (Nov. 8, 2006). That regulation requires an employer to “enter each recordable injury or illness on the OSHA 300 Log and 301 Incident Report within seven (7) calendar days of receiving information that a recordable injury or illness has occurred.” 29 C.F.R. § 1904.29(b)(3). Volks contends that the seven days are a “grace period,” at the end of which the violation “oceur[s]” for purposes of the six-month statute of limitations. Pet’r Br. 33-34. Although the Secretary does not dispute that § 1904.29(b)(3) creates a grace period, she maintains that Volks’ failures to record “constituted continuing violations beginning with Volks’ initial failure to record ... within seven days of learning of each injury or illness,” and “then continuing] throughout the five-year record retention period prescribed by the regulations, which period had not elapsed as of the date of OSHA’s inspection.” Resp’t Br. 16 (emphasis added).
The “five-year record retention period” referred to by the Secretary undermines rather than supports her argument. The regulation that prescribes that period, § 1904.33(a), requires an employer to “save the OSHA 300 Log ... and the OSHA 301 Incident Report forms for five (5) years following the end of the calendar year that these records cover.” 29 C.F.R. § 1904.33(a) (emphasis added). But the Secretary did not cite Volks for violating § 1904.33(a) by failing to save those documents; she cited it for violating § 1904.29(b) by failing to record information on them. Indeed, she does not contend that Volks failed to “save” its logs and incident reports for five years or to have them available during that period.
Nor is there anything in the language of § 1904.33(a) that imposes a continuing obligation to update or correct those documents after seven days. To the contrary, the very next subsection of § 1904.33 makes clear that there is no continuous updating requirement applicable to Volks. With respect to the logs, § 1904.33(b) reads as follows:
Do I have to update the OSHA 300 Log during the five-year storage period? Yes, during the storage period, you must update your stored OSHA 300 Logs to include newly discovered recordable injuries or illnesses and to show any changes that have occurred in the classification of previously recorded injuries and illnesses.
29 C.F.R. § 1904.33(b)(1) (emphasis added). In other words, the requirement to update a stored log does not obligate an employer to constantly reexamine injuries and illnesses, but rather is expressly limited to recording “newly discovered” information. Hence, because the Secretary does not contend that Volks discovered anything new after the seven-day period, the updating requirement for logs has no application to Volks.[1] The analysis with *761 respect to the incident report forms can be even briefer. Section 1904.33(b) expressly states: ‘You are not required to update the OSHA 301 Incident Reports.” Id. § 1904.33(b)(3) (emphasis added).
In sum, even if a stand-alone provision with language like that in § 1904.29(b)(3) could be read to create an obligation that continues after a grace period,[2] § 1904.29(b)(3) does not stand alone. Instead, it is followed by another provision— specifically addressed to “retention and updating” — that makes clear that Volks did not have a continuing obligation to update its logs and incident reports. See 29 C.F.R. § 1904.33. Accordingly, Volks’ violations occurred by the end of the relevant seven-day periods, and the Secretary had no more than six months thereafter to file her citations.[3]
2. OSHA also cited Volks for violating 29 C.F.R. § 1904.32(a)(1) and (b)(3), by failing (i) to review the OSHA 300 log at the end of each relevant calendar year and correct any identified deficiencies, and (ii) to have a company executive certify that the annual summary was correct and complete. See Citation at 29, 30. The Secretary maintains that these violations, like those considered above, “constituted continuing violations for the entirety of the five-year retention period.” Resp’t Br. 16-17.
Section 1904.32(a) provides:
At the end of each calendar year, you must: (1) Review the OSHA 300 Log to verify that the entries are complete and accurate, and correct any deficiencies identified; (2) Create an annual summary of injuries and illnesses recorded on the OSHA 300 Log; [and] (3) Certify the summary....
29 C.F.R. § 1904.32(a) (emphasis added). Another subsection provides that the certification must be made by a company executive. Id. § 1904.32(b)(3). This regulation does not contain a grace period, and it mentions no date regarding the obligations to review, create, and certify other than “the end of each calendar year.” Accordingly, on its face the regulation indicates that a violation occurs only once — when there is a failure to fulfill a listed obligation at the end of a year.
Moreover, Volks’ citation for failing to review the OSHA 300 log makes clear that the Secretary did not charge the company with a continuing violation. That citation states: “At the end of each calendar year, the employer did not review the OSHA *762 Log to verify that the entries were complete and accurate, and correct any deficiencies identified.” Citation at 29 (emphasis added). In light of the introductory clause, it is unreasonable to read this citation as charging a continuing violation; rather, in accordance with the regulation, it makes clear that the obligation occurred at the end of the relevant year. Although the citation for failing to have a company executive certify the annual summary does not contain the same introductory clause, it is based on the same regulatory provision, which imposes an obligation “[a]t the end of each calendar year.” 29 C.F.R. § 1904.32(a).
Once again, the “five-year record retention period” offers no support for the Secretary’s continuing violation theory. As it does with respect to the log and incident report forms, the record retention regulation requires a covered employer to “save” the annual summary for five years. Id. § 1904.33(a). The Secretary did not cite Volks for failing to save the summaries, and there is no suggestion that Volks failed in that regard. Nor did the Secretary cite Volks for failing to create annual summaries, as is also required “[a]t the end of each calendar year.” Id. § 1904.32(a)(2). Indeed, the citation effectively concedes that Volks did so.[4] Instead, Volks was cited for two failures that necessarily had to have taken place before or at the time the annual summary was created. A self-evident purpose of requiring review of the OSHA 300 log at the end of the year, id. § 1904.32(a)(1), is to ensure the accuracy of the annual summary that is based on that log, see id. § 1904.32(a)(2). And the company executive’s certification of the accuracy of the annual summary, required by § 1904.32(b)(3), must be made directly on the annual summary form itself. See OSHA Form 300A.
Accordingly, to make even a colorable claim that Volks’ violations were continuing, the regulation would have to require Volks not just to save the annual report, but to update it during the five-year record retention period. But the question of whether there is such an updating requirement is asked and answered by the OSHA regulation itself: “Do I have to update the annual summary? No, you are not required to update the annual summary, but you may do so if you wish.” 29 C.F.R. § 1904.33(b)(2).
3. In sum, it is clear that the obligations imposed by § 1904.29(b)(2) and (b)(3) must be satisfied by the end of that regulation’s seven-day grace period, while the obligations imposed by § 1904.32(a)(1) and (b)(3) must be satisfied at the end of the relevant year. Those obligations do not continue thereafter. Hence, for purposes of 29 U.S.C. § 658(c), “violation[s]” of these regulations “occur[]” at those dates and do not continue. And, as § 658(c) requires, “no citation may be issued ... after the expiration of six months following the occurrence of any [such] violation.” [5]
*763 II
None of this is to say, as the petitioner suggests in its opening brief, that a statute of limitations like § 658(c) can never admit of a continuing violation for a failure to act. To the contrary, where a regulation (or statute) imposes a continuing obligation to act, a party can continue to violate it until that obligation is satisfied, and the statute of limitations will not begin to run until it does.
As the Court notes, OSHA’s record retention regulation imposes such a continuing obligation: an employer “must save the OSHA 300 Log, ... the annual summary, and the OSHA 301 Incident Report forms for five (5) years.” 29 C.F.R. § 1904.33(a); see Court Op. at 755-56, 757 n. 3. If the employer “loses or destroys a record before the end of that time period, that ... is a violation.” Court Op. at 756. Indeed, even if the company simply does not have the record during that period— whether because it was lost or destroyed or for any other reason, known or unknown — that too is a violation of the obligation to retain the records for five years. Accordingly, OSHA may cite an employer for such a violation “for six months after the fifth year.” Id. at 756.
Similarly, if an employer fails in its regulatory obligation to provide “machine guarding ... to protect the operator and other employees in the machine area from hazards,” 29 C.F.R. § 1910.212(a)(1), a citation remains timely more than six months after the first unguarded day, because each day a machine is unguarded there is a continuing violation-a continuing “occurrence.” See Court Op. at 758. Likewise, as Volks itself acknowledges, OSHA regulations requiring employers to train their employees impose continuing obligations that an employer can continue to violate, at least as long as the employee is in the workplace and exposed to danger. Oral Arg. Recording at 30:50; see Court Op. at 757-58. Hence, an employer can violate the asbestos training requirement, which requires that it provide training to employees who are exposed to specified concentrations of asbestos “prior to or at the time of initial assignment,” 29 C.F.R. § 1910.1001(j)(7), long after the time of that initial assignment.
This court has read statutes of limitations similar to § 658(c) as allowing for continuing violations in other contexts as well. At issue in Postow v. OBA Federal Savings & Loan Ass’n, 627 F.2d 1370 (D.C.Cir.1980), for example, was the Consumer Credit Protection Act’s statute of limitations, which provides that an action must be brought “within one year from the date of the occurrence of the violation” of the Act, 15 U.S.C. § 1640(e). The statutory provision allegedly violated required lenders to make certain disclosures “before the credit is extended.” 627 F.2d at 1374 (quoting 15 U.S.C. § 1639(b) (1976)). Although we concluded that credit was “extended” when the defendant bank became obligated to make a loan and the plaintiff borrowers paid a stand-by fee, we held that “the nondisclosure violation [w]as a continuing one” that first occurred when the bank became obligated but continued until the borrowers were given the required disclosures at settlement. Id. at 1380.[6]
*764 Also significant are a number of appellate decisions holding that the registration provision of the Sex Offender Registration and Notification Act creates a “continuing offense” for purposes of the Ex Post Facto Clause. See, e.g., United States v. Clements, 655 F.3d 1028, 1029 (9th Cir.2011). That provision requires a sex offender to update the relevant sex offender registry “not later than 3 business days after each change of name, residence, employment, or student status,” 42 U.S.C. § 16913(c). See also United States v. Edelkind, 525 F.3d 388, 393 (5th Cir.2008) (holding that the willful failure to pay child support is a continuing offense for purposes of the statute of limitations).
These regulatory and statutory violations cannot be distinguished from the ones before us on the ground that they involve repeated acts rather than continuing failures to act. They do not. Instead, they are distinguishable because in each case it is reasonable to read the provision at issue as imposing a continuing obligation. Here, by contrast, such a reading is simply implausible.
Ill
An “agency is entitled to ... deference when it adopts a reasonable interpretation of regulations it has put in force.” Federal Express Corp. v. Holowecki, 552 U.S. 389, 397, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). In this case, however, the Secretary’s contention — that the regulations that Volks was cited for violating support a “continuing violation” theory — is not reasonable. Accordingly, because none of the challenged citations were issued within six months “following the occurrence of any violation,” 29 U.S.C. § 658(c), I agree with my colleagues that the petition for review should be granted and the citations vacated.

. The Secretary's brief on this point is puzzling. It acknowledges that employers are not "required to constantly re-examine injures and illnesses during the five-year retention period.” Resp’t Br. 36. "Instead, the examination and assessment of illnesses and injuries should usually take place only once, either within the seven-day grace period found in § 1904.29(b)(3), or at any point thereafter as soon as the employer realizes that it has failed to meet its ongoing recording obligations.” Id. And yet, there is nothing in the record to suggest that Volks "realized” after the passage of the seven-day period that *761 it had failed to record a recordable case. To the contrary, the parties stipulated that "the date that Volks received information that a recordable injury or illness occurred” was the date of the “injury or illness” itself. Stipulations of the Parties ¶ 2.

. Cf. United States v. George, 625 F.3d 1124, 1131 (9th Cir.2010) (holding that the registration provision of the Sex Offender Registration and Notification Act, which requires a sex offender to update the relevant sex offender registry “not later than 3 business days after each change of name, residence, employment, or student status,” 42 U.S.C. § 16913(c), creates a "continuing offense” for purposes of the Ex Post Facto Clause), vacated on other grounds, 672 F.3d 1126 (9th Cir. 2012).

. For this reason, the Commission’s comparison between an inaccurate entry on an OSHA 300 log and the existence of a condition that does not comply with a safety standard is inapt. See Commission Decision at *3-5. As discussed above, the recording regulations make clear that the company’s recording obligation occurs at a particular time. By contrast, as discussed below in Part II, OSHA's safety standards impose abatement obligations that continue until the unsafe conditions are corrected. Those obligations are categorical and not bound to any particular time. See, e.g., 29 C.F.R. § 1910.212(a)(1) (providing that "machine guarding shall be provided to protect the operator and other employees in the machine area from hazards”).

. The citation states that certification was made by Volks’ Human Resources/Safety Manager rather than a company executive. Citation at 30. Certification is made on the annual summary itself. See OSHA Form 300A, available at http://www.osha.gov/ recordkeeping/RKforms.html.

. The Secretary’s repeated references to two provisions of the OSH Act do not advance her claim that Volks can be cited for continuing violations in this case. Section 657(c)(1) provides that "[e]ach employer shall make, keep and preserve ... such records regarding his activities ... as the Secretary ... may prescribe by regulation.” 29 U.S.C. § 657(c)(1). Section 657(c)(2) provides that "the Secretary ... shall prescribe regulations requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses.” Id. § 657(c)(2). But Volks was not cited for vio *763 lating statutes that authorize the prescription of regulations. Rather, it was charged with violating specific regulations that the Secretary actually did prescribe. As discussed in the text, those regulations do not impose continuing obligations.

. Similarly, in Wilderness Society v. Norton we indicated that the plaintiff's suit against the National Park Service (NPS) for failing to perform statutorily mandated wilderness reviews was not time-barred by the six-year statute of limitations for " ‘every civil action *764 commenced against the United States,’ ” notwithstanding that the plaintiff brought its claim more than six years after NPS had failed to meet its statutory deadline to perform such reviews. 434 F.3d 584, 588-89 (D.C.Cir.2006) (quoting 28 U.S.C. § 2401(a)). This was so, we said, because NPS was “in continuous violation of its statutory obligations.” Id. at 588. Although we did regard the plaintiff’s statutory claims as comparable to mandamus, see Court Op. at 757 n. 4, what mattered was that the plaintiff did "not complain about what the agency ha[d] done but rather about what the agency ha[d] yet to do.” 434 F.3d at 589 (internal quotation marks omitted). And what the agency had "yet to do” was to meet a statutory deadline that had long since passed. See id.