United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 22, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 02-30739

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BUTCH WILSON, also known as Calvin Odom,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and LITTLE[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Calvin Odom, a/k/a Butch Wilson ("Odom"), was convicted of conspiracy to possess with

intent to distribute 50 grams or more of cocaine base and five kilograms or more of cocaine

hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to commit money

laundering in violation of 18 U.S.C. § 1956(a)(1)(A). He timely appealed his conviction, challenging

three evidentiary rulings and the jury selection procedure. We AFFIRM Odom's conviction, finding

———————

[*]District Judge of the Western District of Louisiana, sitting by designation.

the evidentiary rulings were not an abuse of the district court's discretion, and the jury selection procedure was not reversible error.

I

The facts established at trial are as follows. Odom was the head of an organization that distributed cocaine from Los Angeles, California, where he resided, to Shreveport, Louisiana. Packages of cocaine were sent from Los Angeles to Shreveport by car or in Federal Express packages. In Shreveport, Odom's half-brother, James McDade ("McDade"), either sold the cocaine or used other dealers to sell the cocaine. Wayne Kelly ("Kelly") and Andre Osborne ("Osborne"), who both pleaded guilty prior to testifying at trial, were sent to Shreveport by Odom to assist in distributing the cocaine and laundering the profits generated. Odom occasionally traveled to Shreveport to monitor the business.

The money was usually sent back to California through Western Union in the name of fictitious senders. The cash was retrieved by five women in California at thirty different locations. The money was sent from approximately twelve different Western Union locations in the Shreveport area. The women who picked up the money were all involved in romantic relationships with Odom. They testified at trial they retrieved the money at his request and gave it to him. They also testified they were abused by Odom.

At trial, most of the testimony was by Odom's co-conspirators. However, the evidence regarding the wire transfers included a witness who identified and analyzed the Western Union payment records, the records themselves, and expert testimony. Additionally, the arresting officers testified that Odom tried to escape arrest by driving backwards out of the parking lot until his car was rammed by the arresting agents.

II

Odom first challenges three evidentiary rulings by the district court: the admission of testimony about Odom's physical abuse of his female co-conspirators, of a letter written by Osborne, and of expert witness testimony by an Internal Revenue Service ("IRS") special agent. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Griffin*, 324 F.3d 330, 347 (5th Cir. 2003).

Odom asserts the admission of testimony regarding his physical abuse of his female co-conspirators was erroneous under FED. R. EVID. 403 because the probative value of the evidence was substantially outweighed by the danger of undue prejudice.[1] Under Rule 403, relevant evidence can be excluded only if the danger of unfair prejudice *substantially* outweighs its probative value. *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993). Here, although the physical abuse testimony introduced the risk that a juror could have convicted Odom based on his behavior toward the women, it also suggested the women were motivated by fear of Odom. Thus, the testimony made a central issue, whether the women acted at Odom's behest when they picked up the money, more likely. The district court has broad discretion to weigh the relevance, probative value and prejudicial effect of the evidence. *United States v. Bermea*, 30 F.3d 1539, 1562 (5th Cir. 1994). This evidence substantiated a central issue in the case and accordingly the district court did not abuse that discretion when it held the probative value of the testimony was not substantially outweighed by its danger of unfair prejudice.

---

[1]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Odom also challenges the district court's admission of a letter written by Osborne as a prior consistent statement under FED. R. EVID. 801(d)(1)(B). Osborne testified at trial that Odom sent him to Shreveport to assist McDade and Kelly in distributing cocaine. He also testified that he sold crack for Odom. On cross-examination, the defense focused on the benefits Osborne derived from his plea agreement with the government, implying these benefits were a motivation to fabricate testimony. On re-direct, the government introduced a letter Osborne wrote to McDade while in prison three years prior to the government's plea bargain. In the letter, Osborne referred to cocaine that McDade handled for Odom and threatened to tell Odom that McDade had been cheating him if McDade did not provide Osborne with money to pay for an attorney.

Under Rule 801, a prior statement of a declarant subject to cross-examination that is consistent with the declarant's testimony at trial is admissible if offered to "rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." FED. R. EVID. 801(d)(1)(B). Osborne's letter was consistent with his testimony at trial implicating Odom as the head of the cocaine distribution organization and, as such, it rebutted the implication that Osborne was lying to attain the benefits of his plea bargain. Rule 801 also contains a temporal requirement that the prior consistent statement must have been made "before the charged recent fabrication or improper influence or motive." *See Tome v. United States*, 513 U.S. 150, 167, 115 S. Ct. 696 (1995). Even though Osborne may have also had a motive to fabricate when he wrote the letter, considering Osborne wrote his letter three years earlier, while in prison on an unrelated charge, to a person who could not directly help Osborne avoid prison time, the district court did not abuse its discretion in concluding that the motive to write the letter was different than the motive to fabricate arising from his plea bargains charged at trial. A prior consistent statement need not rebut all motives

-4-

to fabricate, but only the specific motive alleged at trial. *See United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998) (interpreting MIL. R. EVID. 801(d)(1)(B), the armed forces verbatim counterpart to Rule 801(d)(1)(b)); *Dowthitt v. Texas*, 931 S.W. 2d 244, 264 (Tex. Crim. App. 1996) (interpreting TEX. R. CRIM. EVID. 801(e)(1)(B), Texas's prior counterpart to Rule 801(d)(1)(B)). The letter rebutted the specific motive to fabricate charged at trial and accordingly, the admission of the letter was not an abuse of discretion.

Odom also claims that the district court erred in admitting expert testimony by IRS Special Agent Rick Adams ("Adams"). Adams testified that narcotics traffickers use Western Union to move money and explained the reasons why they do so. He also testified that the purpose of Currency Transaction Reporting ("CTR") requirements[2] is to track the movement of large amounts of currency because such amounts are often related to some type of illegal activity. Adams opined that a CTR should have been filled out in this case when Odom used multiple small transactions to transact more than $10,000 worth of currency in one day. This testimony is admissible because it was introduced to help the jury understand methods of operation unique to the drug distribution business and the significance of using Western Union in a series of structured transactions. *See United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995) (finding that an expert witness may testify about methods of operation unique to the drug distribution business). The testimony made it more probable that Odom and the other conspirators structured their transactions using multiple small dollar transactions to avoid CTR requirements. *See United States v. Fuller*, 974 F.2d 1474, 1482-83 (5th Cir. 1993) (permitting expert testimony explaining CTR requirement because it made facts of consequence more probable). Furthermore, as an expert, Adams was permitted to suggest

---

[2]Enacted at 31 U.S.C. § 5313.

appropriate inferences from facts in evidence because the average juror may not be aware of the significance of Odom's many small transactions with Western Union. *See United States v. Willey*, 57 F.2d 1374, 1389 (5th Cir. 1995) (holding experts are permitted to suggest appropriate inferences from facts in evidence if expert's specialized knowledge is helpful in understanding facts). Accordingly, it was not an abuse of discretion to admit Adam's testimony.

Finally, Odom challenges jury selection procedure, claiming a violation of FED. R. CRIM. P. 24 ("Rule 24"). Because Odom did not object to the jury selection procedure,[3] we review this claim for plain error. See FED. R. CRIM. P. 52(b). To correct the jury selection procedure under plain error review: (1) there must be an error, which is a deviation from a legal rule; (2) the error must be plain )) that is clear or obvious at the time of trial; (3) the plain error must affect substantial rights, meaning that normally the defendant must make a specific showing of prejudice. *See id.*; *United States v. Olano*, 507 U.S. 725, 732-36; 113 S.Ct. 1770 (1993).

Odom contends there were two errors in the jury selection procedure: (1) the court granted the government an additional peremptory challenge beyond the six allotted in Rule 24(B)(2);[4] and (2) the court did not comply with the Rule 24(c)[5] requirements that alternate jurors be separately seated

---

[3]*See* Minute Entry, February 15, 2002, Record on Appeal, Vol. II at 300.

[4]"The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year." FED. R. CRIM. P. 24(b)(2).

[5]Rule 24(c) states:

(1) The court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties . . . (2)(B) Alternate jurors replace jurors in the same sequence in which the alternates were selected . . . (4) Each side is entitled to the number of additional peremptory challenges to prospective alternate jurors specified below. These additional

and challenged and that alternates replace jurors in the same sequence as the alternates were selected. At trial, the district court initially allowed Odom eleven peremptory challenges and the Government seven. Odom used all eleven of his challenges and the government used six of its seven. Fourteen jurors were seated. At the conclusion of the trial, each party was permitted one additional peremptory challenge because all fourteen jurors still remained. This procedure is a deviation from the jury selection procedure explained in Rule 24 because it granted the parties additional peremptory challenges and excused two jurors as alternates at the end of trial instead of designating them as alternate jurors at the impanelment stage. Moreover, the procedure used by the district court was in clear violation of Rule 24 and was, accordingly, a plain error. However, Odom cannot show that this plain error affects his substantial rights.

The value of Odom's peremptory challenge was not diluted by the district judge's departure from the requirements of Rule 24. Odom used all twelve challenges allotted to him by the district judge. The Government used seven out of eight allotted challenges. This means that Odom used thirteen out of nineteen total challenges, or 63% of the total challenges used.[6] If Rule 24 had been followed, Odom could have used ten out of sixteen possible challenges, or 62.5% of total challenges. Thus, the value of his challenge was actually marginally increased by the jury selection procedure used.

_____

challenges may be used only to remove alternate jurors . . . (A) One additional peremptory challenge is permitted when one or two alternates are impaneled . . . .
FED. R. CRIM. P. 24(c).

[6]Only challenges actually used are considered to determine whether Odom's rights were prejudiced. Extra challenges that were granted, but not used are academic. *See United States v. Clark*, 506 F.2d 416, 418 (5th Cir. 1975).

Odom also asserts the prosecution had a disproportionate ability to shape the jury with the benefit of hindsight because it used a peremptory challenge on the body of the jury at the conclusion of trial. The ability to shape the jury with the benefit of hindsight is a concern. Here, however, both parties were given an equal ability to shape the jury with the benefit of hindsight. The Supreme Court, "in analyzing the impartial jury requirement and peremptory challenges particularly, has long indicated that the relative rights of the prosecution and peremptory challenges particularly, must be at least *equal*." *United States v. Harbin*, 250 F.3d 532, 541 (7th Cir. 2001) (emphasis added) (citing *Georgia v. McCollum*, 505 U.S. 42, 47; 112 S.Ct. 2348, (1992); *Batson v. Kentucky*, 476 U.S. 79, 107 & 126; 106 S.Ct. 1712 (1986); *Swain v. Alabama*, 380 U.S. 202, 220; 85 S.Ct. 824 (1965) (noting in the context of peremptory challenges that between the defendant and the state "the scales are to be evenly held")). Because the ability to shape the jury at the end of the trial stage was equal, Odom cannot show prejudice and thus his substantial rights were not affected by this departure. *Cf. Harbin*, 250 F.3d at 538-41(reversing conviction when jury selection procedure granted prosecution unilateral control over composition of jury during trial stage).

Furthermore, the prosecution's use of its peremptory challenge prior to deliberation to remove one of three African-Americans from the jury did not prejudice Odom. In rejecting Odom's *Batson* challenge to the exclusion of the African-American juror, the district court confirmed that he was tried by a jury whose members were selected pursuant to nondiscriminatory criteria.[7] Accordingly, Odom has not established that his substantial rights were prejudiced and the violation of Rule 24 is not reversible error.

---

[7]Odom concedes there is no basis for overturning the trial court's denial of his *Batson* challenge to the excused juror.

III

The district court did not abuse its discretion in admitting evidence of Odom's abuse of his co-conspirators, nor did it abuse its discretion in admitting Osborne's letter as a prior consistent statement, nor in admitting the expert witness testimony of Adams. Moreover, the error in the jury selection procedures did not affect Odom's substantial rights, and therefore is not a reversible error. Accordingly, Odom's conviction is AFFIRMED.