# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 1, 2013

Lyle W. Cayce
Clerk

No. 12-60707

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CASSANDRA FAYE THOMAS,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

Before OWEN and HAYNES, Circuit Judges and LEMELLE, District Judge.[*]

IVAN L.R. LEMELLE, District Judge:

Dr. Cassandra Thomas ("Thomas") is a licensed physician in the state of Mississippi who operated Central Mississippi Physical Medicine ("CMPM"), an in-home physical therapy services provider for Medicare patients, from 2002 through 2005. While operating CMPM, Thomas falsely billed Medicare and Medicaid programs for medically unreasonable and unnecessary physical therapy services, failed to directly supervise the administration of the physical therapy, and hired unlicensed personnel to administer the physical therapy. Thomas sent employees with little to no medical background to the homes of

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 12-60707

elderly Medicare patients to provide "physical therapy services." These non-medical employees traveled to the homes alone, without Thomas' supervision, despite the fact that none was ever licensed as a physical therapist or physical therapist assistant. Thomas then billed these services to Medicare at skilled medical professional rates, while the employees themselves were paid on average just over $11 an hour. Thomas also routinely waived the 20% co-payment she was required to collect from Medicare patients. Thomas also inflated the amount of hours she billed Medicare, billing for several hours a day of services when the employees only spent about an hour with each patient. At the time CMPM ultimately closed, it retained $2.3 million in proceeds in its accounts, which was seized by the Department of Justice.

On December 2, 2008, Thomas was indicted with ten counts of healthcare and Medicare fraud arising from her operation of CMPM, including violation of the Health Care Fraud statute, Wire Fraud statute, and fraudulent billing of Medicaid. At trial, Thomas was represented by Joyce and Tom Freeland. Tom Freeland was charged with misdemeanor conduct in Oxford, Mississippi, shortly before Thomas' trial began, but continued to represent Thomas during trial. Potential jurors were not questioned regarding knowledge of Tom Freeland's misdemeanor charge. Thomas was present throughout the trial, including *voir dire*, except for an in-chambers conference where the attorneys exercised peremptory challenges and challenges for cause. Thomas was present in the courtroom when the district judge announced an in-chambers conference with attorneys. Thomas remained in the courtroom while the in-chambers conference took place. Thomas had an opportunity to confer with her attorney during a recess between *voir dire* and the in-chambers conference. Thomas told her trial

No. 12-60707

counsel she wanted "at least one African American male on the jury," prior to the in-chambers conference. During the in-chambers conference, the district court first considered challenges for cause and granted the Government's challenge to Juror No. 19, an African-American male who appeared to be sleeping at times during *voir dire*. Thomas' counsel conceded "he's been napping." Among the jurors that Thomas' counsel accepted at the in-chambers conference was Juror No. 17, whom Thomas later claimed she would have challenged because the juror had previously worked with federal authorities to investigate mail theft, and Thomas felt he would be biased against her as a result. After all counsel had exercised their strikes, the district judge asked if either side had any objections to the jury or selection process, and none was raised. While in chambers, the judge read the names of the jurors into the record, and had a court security officer seat the jurors in the jury box before court recessed for lunch. After lunch, the jury panel was sworn in and the jurors were given preliminary instructions for the trial, during which Thomas was present in the courtroom. Thomas had an opportunity to consult with her trial counsel both before and after lunch, prior to the panel being sworn in, and raised no objections or concerns about the jury selection process or in-chambers conference. Thomas was also absent from subsequent in-chambers meetings between the judge and particular jurors regarding possible juror intimidation, juror's outside interaction with acquaintances of the defendant, and a note from a juror.

On April 8, 2011, following a week-long trial, a jury convicted Thomas of all ten counts. Thomas was sentenced to 168 months in prison, followed by three years of supervised release, and ordered to pay over $6.9 million in restitution, in addition to a $1000 special assessment fee. Following her

3

No. 12-60707

conviction, Thomas hired new counsel who moved for new trial, arguing ineffective assistance of counsel, including failure to advise her of her right to be present at the in-chambers conferences regarding jurors. The district court conducted an evidentiary hearing on the motion for new trial and ineffective assistance of counsel claim, at which Tom Freeland testified that he had advised Thomas of her right to be present. The district court denied Thomas' new trial motion, finding that although she had not waived her right to be present, her absence from certain stages of the trial did not substantially affect her right to a fair trial or render her counsel ineffective.

Thomas now appeals her conviction.[1] On appeal, Thomas raises four issues. First, Thomas argues that the district court erred in failing to apply the rule of lenity to dismiss the indictment against her at the pretrial phase. Second, Thomas argues that the district court erred by denying her motion *in limine* to exclude evidence regarding Mississippi physical therapy licensing requirements as irrelevant, as well as by deciding to exclude an article which discussed the ambiguity of the Medicare regulations, and changes to Medicare regulations which occurred after 2005. Third, Thomas argues that the district court erred by denying her constitutional right to be present at all critical stages of her trial. And lastly, Thomas argues that the district court erred in denying the motion for new trial based on ineffective assistance of trial counsel.

We affirm the conviction for reasons below.

I. *Challenge to the indictment*

Thomas' argument challenging the district court's denial of her motion to dismiss indictment is reviewed *de novo*. *United States v. Fontenot*, 665 F.3d 640,

---

[1] However, Thomas does not challenge her sentence.

No. 12-60707

644 (5th Cir. 2011). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Fontenot*, 665 F.3d at 644, quoting *United States v. Crow*, 164 F.3d 229, 234 (5th cir. 1999). Thomas argues that all counts against her failed to meet this standard because the indictment was based on violations of Medicare regulations that were ambiguous or unclear at the time CMPM was in operation. Specifically, Thomas argues that her failure to use licensed physical therapists and failure to directly supervise the services provided were not clearly prohibited by Medicare regulations. This Circuit addressed a similar argument in *United States v. Jones*, 664 F.3d 966 (5th Cir. 2011).[2]

In *Jones*, the defendants challenged their convictions for theft of government funds under 18 U.S.C. §641. 664 F.3d at 976. As in the instant case, the defendants in *Jones* operated a "physical rehabilitation provider for Medicare patients." *Id.* at 971. The Government "alleged that the [defendants] knowingly billed for services they knew were rendered improperly and/or for which they overbilled." *Id.* at 976, (emphasis added). Specifically, the Government alleged that the defendants used unlicensed service providers and billed by the area of the body treated, rather than by time. *Id.* at 977. The *Jones* defendants claimed they did not "knowingly" render services improperly, because the Medicare regulations governing use of unlicensed providers were ambiguous. *Id.* at 977. This Court acknowledged some ambiguity in the Medicare regulations involving use of unlicensed service providers and requirement of

---

[2] Prior to opening CMPM, Thomas served as medical director for the physical therapy service provider at issue in *Jones*.

No. 12-60707

direct supervision by a physician, but found that where the Government alleged other facts as to improper billing, it was sufficient to support the conviction. *Id.* at 977.

Thomas attempts to distinguish the instant case from *Jones*, by arguing that unlike in *Jones*, the Government relied solely on Thomas' use of unlicensed physicians and failure to directly supervise to support the counts in the indictment. However, Thomas' argument is without merit. As in *Jones*, even excluding the facts alleging use of unsupervised, unlicensed service providers, sufficient independent facts existed to clearly state an offense in the indictment– namely, the factual allegation that Thomas knew the physical therapy services were medically unreasonable and unnecessary under Medicare guidelines. Accepting the allegations in the indictment as true, the district court properly recognized this independent factual basis, mooting the need to address Thomas' "rule of lenity/ambiguity" challenge to the other facts underlying her conviction. Accordingly, we affirm the district court's denial of Thomas' motion to dismiss the indictment.

II. *Admission of Evidence*

Thomas' challenge to the district court's denial of her motion *in limine* is reviewed for plain error because she failed to renew her motion during trial. *United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002). To demonstrate plain error on an evidentiary ruling, "an appellant must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error that seriously affects the fairness, integrity, or public reputation of judicial proceedings, but is not required to do so." *Id.* at 208-09, (emphasis added). Thomas argues that the district court's denial of her motion

6

No. 12-60707

*in limine* to exclude the Mississippi state licensure requirements for physical therapists "took away [Thomas'] ambiguity argument" regarding the use of unlicensed employees.    Therefore, Thomas' own argument hinges on the allegedly unclear nature of the importance of state licensing in the context of Medicare regulations governing physical therapists.    Accordingly, the district court cannot have committed "clear or obvious error" in determining that the state licensing requirements were relevant admissible evidence.

As to the article published in 2009 in *U.S. Attorney's Bulletin* which discussed ambiguity in Medicare regulations and subsequent changes to Medicare regulations, the article was never offered into evidence during trial, and the district court excluded the changes to Medicare regulations as irrelevant, as they occurred after 2005 and could not have informed Thomas during her operation of CMPM.    The district court did not commit clear error in excluding evidence that was not available for Thomas to rely on during the period of her fraudulent conduct.    Therefore, we affirm the district court's denial of Thomas' motion *in limine* and exclusion of the articles and Medicare regulations changes.

III. *Right to be present*

Thomas' claim that she was excluded from critical stages of the trial is also subject to plain error review, because she failed to raise an objection contemporaneously. *United States v. Curtis*, 635 F.3d 704, 714 (5th Cir. 2011), citing *United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) (citing Fed. R. Crim. P. 52(b)).    At oral argument on the appeal, Thomas argued that her absence during jury impanelment constituted structural error, such that it is reversible *per se,* without a showing of prejudice to the defendant.    We reject this

No. 12-60707

argument. The Supreme Court has declined to extend automatic reversal of a conviction to violation of a defendant's right to be present at all critical stages of the trial, and this Circuit has consistently required a showing of prejudice to the defendant to constitute reversible error upon a defendant's absence from any part of the jury selection process. *Rushen v. Spain*, 464 U.S. 114, 117-21 (1983); *Curtis*, 635 F.3d 704; *Wilson*, 355 F.3d at 362, citing *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

Thomas asserts that she was excluded from critical stages of the trial on four occasions: (1) exercise of peremptory challenges and jury impanelment; (2) questioning a juror about possible jury intimidation; (3) questioning a juror about a situation happening outside the courthouse; and (4) an in-chambers meeting about how to address a note from the jury. Because Thomas failed to object to her exclusion contemporaneously, this Court reviews this issue under the following test for plain error: (1) There must be "some deviation from a legal rule" that has not been waived by the defendant; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute;" and (3) the error must have affected the defendant's substantial rights, i.e., it "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009). Finally, even if all of the above criteria are met, it remains within this Court's discretion to remedy the error, a discretion which should be exercised only if "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 135.

A. *Deviation from a legal rule without waiver.*

A criminal defendant's right to be present at trial is protected under the Constitution and the Federal Rules of Criminal Procedure. *See United States v.*

*Gagnon*, 470 U.S. 522 (1985); *Curtis*, 635 F.3d 704.  Under the Constitution, the right to presence is protected by both the Sixth Amendment Confrontation Clause, as well as the Fifth Amendment Due Process Clause.  *Gagnon*, 470 U.S. at 526.  Rule 43 incorporates the constitutional right to be present as well as the common law right to be present at trial, therefore the scope of Rule 43 "is broader than the constitutional right alone."  *United States v. Alikpo*, 944 F.2d 206, 209 (5th Cir. 1991).  The distinction is important, because as explained *infra*, the type of right at issue determines the type of action necessary to constitute waiver of said right.

        1.  Jury impanelment

"It is a well-settled principle of constitutional law that a criminal defendant has a right 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings ... [and that] 'the impaneling of the jury is one such stage."  *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002), *quoting Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975); *Tankleff v. Senkowski* 135 F.3d 235, 246 (2d Cir. 1998), citing *Gomez v. United States*, 490 U.S. 858, 873 (1989).  The right to be present at jury impanelment is protected by the Fifth Amendment Due Process Clause, rather than the Sixth Amendment Confrontation Clause, because it involves an instance "where the defendant is not actually confronting witnesses or evidence against him."  *Gagnon*, 470 U.S. at 526.  This Circuit has specifically identified the jury selection process as one which falls under the ambit of constitutionally protected rights, as it is "a stage at which the defendant can provide meaningful assistance to counsel."  *Alikpo*, 944 F.2d at 210 (distinguishing absence during jury selection from an earlier Fifth Circuit case where the Court found no constitutional violation when the

No. 12-60707

defendant was absent from an evidentiary hearing).

"Federal Rule of Criminal Procedure 43 codifies the requirement of the Sixth and Fifth Amendments that a criminal defendant must be present at every stage of his trial, "including jury impanelment." *Curtis*, 635 F.3d at 715, citing Fed. R. Crim. P. 43(a)(2). "One purpose of the right to presence is to protect the defendant's exercise of his peremptory challenges, which means the defendant should be allowed to obtain as much first hand information as feasible to facilitate his ability to participate in the selection of a jury."' *Curtis*, 635 F.3d at 715. This Court has recognized that two requirements stem from this right to presence for peremptory challenges: (1) "[T]he defendant must be present for the substantial majority of the jury-selection process;" and (2) "the defendant must be present in the courtroom at the moment when the court gives the exercise of peremptory challenges formal effect by reading into the record the list of jurors who were not struck." *Id.* at 715 (emphasis added).

In *United States v. Curtis*, the defendant asserted that the district court committed plain error by allowing his attorney to exercise his peremptory challenges in his absence. *Id.* at 714. However, this Circuit held that because the defendant was present for counsel's exercise of challenges for cause, the court's allocation of peremptory challenges to the two sides, and when the peremptory challenges were given formal effect, no error was committed. *Id.*, ("In this case, the district court did not err – much less plainly err – in its conduct of the jury-selection process."). Other circuits have similarly held that "if a defendant is given an opportunity to register his opinions with counsel after juror questioning and is present when the exercise of strikes is given formal effect, then his constitutional right to be present is satisfied." *Cohen v.*

10

*Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002)(emphasis added), citing *United States v. Fontenot*, 14 F.3d 1364, 1370 (9th Cir. 1994); *United States v. Gayles*, 1 F.3d 735, 738 (8th Cir. 1993); *United States v. Bascaro*, 742 F.2d 1335, 1349-50 (11th Cir. 1984); *United States v. Washington*, 705 F.2d 489, 497 (D.C. Cir. 1983). Therefore, as a baseline measure, if a defendant is not present during the reading of the list of jurors not struck (the moment the strikes are given "formal effect") then the absence is in derogation of his constitutional right to be present.

Here, Thomas was not present when trial counsel exercised peremptory challenges or when the court read the list of jurors who were not struck into the record. Therefore, Thomas' absence from the exercise of peremptory challenges was in deviation from her rights both under the Fifth Amendment Due Process Clause and under the express provisions of Fed. R. Crim. P. 43.

"What suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Gonzalez*, 483 F.3d 390, 394 (5th Cir. 2007), (*quoting New York v. Hill*, 528 U.S. 110, 114 (2000)). When a fundamental right such as the right to be present at jury selection is at issue, there is a long-standing presumption against waiver. *Alikpo*, 944 F.2d at 209-10. "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Therefore, to waive a constitutional right to be present at jury impanelment, the waiver must be particularly informed or voluntary.

This Circuit addressed the issue of waiver of the right to be present in the

No. 12-60707

context of jury selection in *United States v. Alikpo*, where the district court commenced trial and *voir dire* in the defendant's absence. 944 F.2d at 208; *see also Curtis*, 635 F.3d at 714. Defense counsel in *Alikpo* indicated to the district judge that he was "willing to go ahead [without the defendant present]." 944 F.2d at 208. On appeal, this Circuit held that this statement by defense counsel, made out of the defendant's presence, was insufficient to constitute a valid waiver of his constitutional right to be present. *Id*. at 209. The Government also conceded that the defendant had not waived his right to be present. *Id*. at 209.

The instant facts present some critical differences from *Alikpo*. First, the defense counsel in *Alikpo* never directly addressed whether his client waived his right (the Court called counsel's statement "ambiguous"). In the present case, when the issue of waiver was raised post-trial, Mr. Freeland indicated to the district judge that Thomas had affirmatively waived her right to be present at jury impanelment. But this appears nowhere in the trial record. Unlike the defense counsel's transcribed statement in *Alikpo*, Mr. Freeland's statement of Thomas' alleged waiver is not in the transcript of the peremptory challenge proceeding. Second, unlike *Alikpo*, the Government does not expressly concede that Thomas did not waive her right. However, in a more unusual and perhaps more telling fact, the <u>district court itself</u> found that "<u>Thomas did not waive the right to be present</u>," following a post-evidentiary hearing on Thomas' motion for new trial based on ineffective assistance of counsel. These facts, particularly the district court's finding that there was no waiver, tend to show less evidence of an "informed and voluntary waiver" than the facts in *Alikpo*. Accordingly, Thomas' challenge based on her absence from jury impanelment satisfies the first prong of the plain error test: a deviation from her legal rights under the

12

No. 12-60707

Constitution and Rule 43, which she did not waive.

> 2. Other in chambers discussions

The other instances where Thomas claims she was excluded include two instances where a juror was brought in for an in-chambers conference with the judge and counsel and a discussion about how to answer a question in a note from the jury. None of these instances were "critical stages" of the trial such that they were subject to constitutional protection. The last instance, involving how to respond to a juror note, involved a question of law where Thomas was unlikely to provide "meaningful assistance to counsel*." See United States v. Alikpo*, 944 F.2d 206, 210 (5th Cir. 1991). As to the conversations between the judge and individual jurors, the Supreme Court has established that such conversations are not protected by the Fifth Amendment Due Process Clause. *Gagnon*, 470 U.S. at 526. "'[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.'" *Id.* (*quoting Rushen*, 464 U.S. at 125-26). The Supreme Court in *Gagnon* established that rights protected under Rule 43 alone, and not under the constitution, do not have a stringent waiver requirement: "A defendant need not be expressly warned of rights under Rule 43, nor do we need any type of waiver to exist on the record." *Gagnon*, 470 U.S. at 528-29. Mere voluntary absence is sufficient to waive a Rule 43 right to be present. *Id*. at 528-29. Here, Thomas does not contest that she was present in the courtroom and aware in each of the instances where the district judge held an *in camera* meeting with a juror, or when the district judge

held an in chambers conference with counsel regarding the juror note. Thomas' mere absence from the meetings was sufficient to waive her right to presence under Rule 43, even if such a right existed. Accordingly, Thomas validly waived her right to be present, rendering it unreviewable by this Court. Therefore, only Thomas' absence from jury impanelment must be evaluated under the remaining prongs of the plain-error test.

B. *Clear or obvious error*

As stated *supra*, it is well-established in this Circuit that a juror's presence during jury impanelment is expressly protected by the Fifth Amendment Due Process Clause. The district court itself recognized the Due Process right to be present. The district court further stated that"[t]he Court finds ... that Thomas did not waive the right to be present." However, the district court failed to engage in an analysis under the Fifth Amendment, and instead focused on the implications under Thomas' Sixth Amendment right to effective assistance of counsel. The legal error of denying Thomas her constitutional right to be present, when the district court acknowledged that she had not waived that right, cannot be said to be "reasonably in dispute." Therefore, a finding of clear error is warranted.

However, "[r]eversal for plain error is necessarily a fact-specific inquiry and ... a finding that there was an error that was plain will not automatically lead to reversal." *United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012). A defendant may meet the first two prongs of plain error, as Thomas has here, and still fail to show that the error affected his substantial rights. *Escalante-Reyes*, 689 F.3d at 424, citing *United States v. Mondragon-Santiago*, 564 F.3d 357, 364-65 (5th Cir. 2009). Accordingly, we examine Thomas' absence

from jury impanelment under the third prong of the plain error test.

C. *Impact on Thomas' substantial rights*

To establish that the clear error in the jury selection process affected her substantial rights, Thomas must "make a specific showing of prejudice." *United States v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003). Accordingly, Thomas bears the burden to show that the error affected the outcome of the district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993) ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."), citing Fed. R. Crim. P. 52(b); *See also United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) ("'To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings.'") (*quoting United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012). "'[F]ederal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error ... had [a] <u>prejudicial impact on the jury's deliberations</u>.'" *Olano*, 507 U.S. at 734 (emphasis added). This Circuit has recognized jury impanelment as "a stage at which the defendant can provide meaningful assistance to counsel." *Alikpo*, 944 F.2d at 210. "The Supreme Court, in 'analyzing the impartial jury requirement and peremptory challenges particularly, has long indicated that the relative rights of the prosecution and peremptory challenges particularly, must at least be equal." *Wilson*, 355 F.3d at 363. The Supreme Court has cautioned, however, "that the exclusion of a defendant from a trial proceeding should be considered in light of the whole record." *Gagnon*, 470 U.S. at 526-27. In *Olano*, the Supreme Court found that the presence of alternate jurors during jury deliberations was not sufficient to

meet the standard of substantially affecting the outcome of the proceedings. 507 U.S. at 739-41. In *Wilson*, this Circuit rejected the defendant's claim that his substantial rights were affected, because he failed to show that the prosecution had unilateral control over the jury selection procedure, or that jury members were selected pursuant to discriminatory criteria. 355 F.3d at 363.

Here, Thomas argues that she was not able to provide meaningful assistance in jury selection, because she would have used a peremptory challenge to strike Juror No. 17, who Mr. Freeland allowed to remain on the jury.[3] Thomas also stated that she would have asked Mr. Freeland to rebut the Government's challenge for cause to Juror No. 19, who was accused of napping during the *voir dire* process, because she wanted "at least one black male" on the jury panel, and expressed this desire to Mr. Freeland.

Undoubtedly, if Juror No. 17 had been struck using a peremptory challenge, the makeup of the jury panel would have been different. Thomas has met the burden to prove that there would have been *an impact* on jury deliberations if she had been allowed to participate in peremptory challenges – but her burden is to prove *a prejudicial impact*. Considering the record as a whole, as the Supreme Court mandates, she has failed to show that the impact would necessarily have been prejudicial. Further, Thomas admits that she "expressly requested trial counsel [make] every effort to select at least one black male juror to serve on the panel." Therefore, by her own admission, Thomas' absence from jury impanelment had little to no impact as to Mr. Freeland's

---

[3] Thomas contends that this juror was biased because as a former postmaster, he had previously worked with the Office of Inspector General ("OIG") to catch an employee stealing mail, and two of the Government's witnesses in the instant case against Thomas were OIG agents.

## No. 12-60707

actions with regard to Juror No. 19, since he was made aware of Thomas' desire to keep him on the panel prior to jury impanelment.[4] Because Thomas has failed to establish that her absence from jury impanelment affected the outcome of the district court proceedings, we need not consider whether to exercise discretion under plain error review. Accordingly, none of Thomas' absences from in-chambers conferences constitute reversible error.

IV. *Right to effective assistance of counsel*

The Sixth Amendment accords a right of effective to assistance of counsel to criminal defendants. *See Strickland v. Washington*, 466 U.S. 668 (1984). "On a claim of ineffective assistance of counsel, the defendant bears the burden of demonstrating that (1) counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different." *United States v. Bishop*, 629 F.3d 462, 469 (5th Cir. 2010), citing *Strickland*, 466 U.S. at 697. "Judicial scrutiny of counsel's performance must be highly deferential... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption." *Strickland*, 466 U.S. at 689. "Thus, a court deciding an ... ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "Strategic choices made after thorough investigation of law

---

[4] Further, even assuming Thomas' request was not communicated to Mr. Freeland before jury impanelment, her race-based request would go against the selection of a jury pursuant to "nondiscriminatory criteria," as the district court properly noted in the post-trial hearing on motion for new trial due to ineffective assistance of counsel. *See Wilson*, 355 F.3d at 364.

17

and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690-91.

Thomas raised her ineffective assistance of counsel claim in a post-conviction motion for new trial. The district court received submissions from counsel and held an evidentiary hearing on the motion for new trial. The district court denied the motion for new trial in a written ruling. On appeal, Thomas reurges her ineffective assistance of counsel claim on four grounds:  (1) failure of the Freelands to inform the Court of criminal charges pending against Tom Freeland; (2) trial counsel's failure to object to evidence of seized bank accounts; (3) failure to object to the Government's appeal to class prejudices; and (4) cumulative error. Thomas' claim of ineffective assistance of counsel presents a mixed question of law and fact, and therefore "[t]he district court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006).

A.  *Voir dire*

As to Thomas' first argument, that the Freelands' failure to disclose Mr. Freeland's assault charges to the jury was objectively unreasonable, Thomas' logic is counterintuitive. She argues that "[b]ecause the Freelands are well-known in North Mississippi, the charges against Tom Freeland and his subsequent conviction received extensive publicity in news, print, and electronic media." However, Thomas then argues that because the Freelands didn't inform her or the district judge of these charges, she was denied the opportunity to explore potential juror bias about the issue during *voir dire*. Under the first prong in *Strickland,* it hardly seems "objectively unreasonable" for counsel to decline to inform a potential jury pool of his own criminal charges, where being

informed for the first time during *voir dire* would likely render them more prejudiced than if they had remained uninformed.  Further, if the news of the charges was as pervasive as Thomas asserts, it could hardly be considered objectively unreasonable for the Freelands to assume that the district judge and Thomas were aware of the charges without the need to disclose it personally.  Finally, even assuming that the Freelands' actions were objectively unreasonable, if the charges against Freeland were not newsworthy enough to catch his own client's attention, it is unlikely that potential jury bias was so great that the failure to address it in *voir dire* resulted in prejudice to Thomas sufficient to meet the second prong under *Strickland.*  Accordingly, the district court did not commit clear error in making a factual determination that the Freelands' actions during *voir dire* were neither objectively unreasonable nor prejudicial to Thomas' defense.

B.  *Seized bank accounts*

Thomas next claims that the Government repeatedly violated the district court's order bifurcating the trial into liability and forfeiture phases, by referring to seized CMPM checking accounts totaling $2.3 million. Thomas asserts that Mr. Freeland's failure to object to these alleged violations amounted to ineffective assistance of counsel.  During the post-trial hearing on this claim, Mr. Freeland stated that he did not object to the evidence to demonstrate, at Thomas' insistence, "good faith ... that she was not stripping money out of these accounts ... it demonstrated that once she saw there was questions [about the billing of Medicare] .. she'd have the money to give back."  The district court made a factual determination that Mr. Freeland's decision not to object to

evidence concerning the seized bank accounts was a strategic choice .[5] Thomas makes no argument that this factual finding by the district court was clear error. Accordingly, Thomas fails to satisfy the first prong of *Strickland* requiring objective unreasonableness.

C. *Class prejudices*

Thomas next cites trial counsel's failure to object to Government questioning regarding her income, value of her home, and her husband's income. Thomas alleges that this line of questioning was an "appeal to class prejudices." Although prosecutorial appeals to class prejudice are highly improper and can be prejudicial, this Circuit has recognized that such evidence of a defendant's wealth can still be admissible if it is relevant to the crimes at issue. *United States v. Aldredge*, 553 F.3d 881, 895 (5th Cir. 2008) (holding that evidence of the defendant's lavish spending was properly admitted to prove money laundering counts). Here, the Government contends that it raised the issue of Thomas' wealth to respond to her "suggestion that she did not benefit from the money retained by her company." Given this Circuit's ruling in *Aldredge* allowing lavish spending evidence to come in, it was not objectively unreasonable that the Freelands chose not to object to the evidence.

D. *Cumulative errors*

Finally, we reject Thomas' fourth argument for ineffective assistance of counsel due to "cumulative error." Thomas presents this as an argument in the alternative, in the event that the other three errors which Thomas alleges fail to rise to the level of ineffective assistance of counsel. Thomas provides no legal basis for this argument in a conclusory, three-sentence briefing. Further, there

---

[5] The district court also found that the second prong of prejudice was not satisfied.

No. 12-60707

is no precedent supporting the idea that a series of "errors" that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*. *Strickland*, 466 U.S. at 689. ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation.... The purpose is simply to ensure that criminal defendants receive a fair trial.").

\*     \*     \*

AFFIRMED.